**Charles H. CARTER and Virgie Ann Carter, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 78–3506.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1980.

Decided May 18, 1981.

---

W. E. Coombs, Rialto, Cal., for petitioners-appellants.

Daniel F. Ross, Washington, D. C., on brief; Karl P. Fryzel, Washington, D. C., argued for respondent-appellee.

Before FERGUSON and CANBY, Circuit Judges, and HATTER,* District Judge.

HATTER, District Judge:

The appellants, Charles and Virgie Ann Carter, appeal from the Tax Court's denial of their claims for business tax deductions under Section 162 of the Internal Revenue Code of 1954 (I.R.C. § 162) for the taxable years 1971 to 1973. The Commissioner of Internal Revenue disallowed their claimed business deductions for the operating expenses of their yacht and for Mrs. Carter's tuition expenses. The Tax Court upheld the deficiencies to the extent of $11,860. For the reasons stated below, we concur with the findings of the Tax Court and affirm its judgment.

## I

## FACTUAL BACKGROUND

In 1966, the Carters began to plan a voyage around the world to commence in the summer of 1971. Pursuant to those plans, they purchased a yacht, took courses in seamanship and embarked on cruises to San Francisco, Acapulco and Hawaii. In 1971, Mr. Carter, who practiced law from 1946 to 1971, became an inactive partner in his law firm to avoid potential health problems which could result from the pressures of his career. Mrs. Carter, who had taught enrichment courses as a resource teacher during the 1970–71 school term, entered a Master's of Education program.

In August of 1971, appellants and their three children began the voyage. During the years 1971–1973, they engaged in various travel-related activities. They occasionally chartered their boat for hire and made films. Mr. and Mrs. Carter wrote extensively about their travels and succeeded in publishing a few of their writings during and after the three years in question. Mrs. Carter also received academic credit for some of those writings. Other than in 1971, when she earned $94.00 as a substitute teacher in Hawaii, Mrs. Carter did not teach during the 1971–1973 period, nor does the record indicate she has done any significant teaching since then.

## II

## DISCUSSION

A. The Yachting Expenses

Appellants contend they are entitled to a deduction for their yachting expenses because the expenses qualified as ordinary and necessary in carrying on the businesses of chartering and writing. The Commissioner found that the chartering and writing were activities not engaged in for profit under I.R.C. § 183.[1] Thus, the Carters were

---

* The Honorable Terry J. Hatter, Jr., United States District Judge, Central District of California, sitting by designation.

1. The section reads in pertinent part:
   § 183. Activities not engaged in for profit
   (a) General rule
   In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371(b)), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. ·
   . . . .
   (c) Activity not engaged in for profit defined
   For the purposes of this section, the term "activity not engaged in for profit" means any

not entitled to deduct operating expenses beyond the income they received from their activities during the years in question.

■ To determine whether an activity is not engaged in for profit, I.R.C. § 183(c) must be read in conjunction with I.R.C. § 162[2] which specifies allowable deductions for trade or business expenses. Section 162 applies when a taxpayer's basic or dominant motive is to realize a profit or taxable income from the activity. *Hirsch v. Commissioner*, 315 F.2d 731, 736 (9th Cir. 1963). The determination of the taxpayer's primary motivation is a question of fact. *Jasionowski v. Commissioner*, 66 T.C. 312, 319 (1976). The factual determinations of the Tax Court on this issue will not be set aside unless such findings are clearly erroneous. *First Security Bank of Idaho, N. A. v. Commissioner*, 592 F.2d 1050, 1053 (9th Cir. 1979). The Tax Court found that neither of the appellants was carrying on a trade or business or engaged in an activity for profit during the years at issue.

■ In drawing its conclusions, the Tax Court considered the relevant factors set forth by Treasury Regulation § 1.183–2(b),[3] which may indicate the taxpayers' intent in engaging in the activity. These pertinent factors are: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended in carrying on the activity; (4) the taxpayer's expectation that the value of assets used in an activity may appreciate; (5) the taxpayer's success in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits derived from the activity; (8) the financial status of the taxpayer; and (9) the presence of elements of personal pleasure or recreation in the activity.[4]

Some of the taxpayers' activities had manifestations of a business. The Carters kept income and expense records, spent time and effort on the activities, and discontinued film making when they found it to be unprofitable. The Tax Court noted, however, that these facts were significantly outweighed by other evidence that indicated appellants did not undertake these activities for profit.

There was testimony indicating that Mr. Carter's primary motive behind the voyage was to escape from the pressures of his law practice. The taxpayers accumulated substantial assets prior to the voyage and supported their family with negligible income from the claimed activities. From their voyage-related receipts and expenses, the taxpayers experienced net losses of $5,357 for 1971, $13,085 for 1972, and $20,255 for 1973. The occasional income received from the chartering and writing activities was minimal by comparison ($3,577 for all three years). The evidence indicates that the Carters had not seriously investigated the profit potential of their writing and chartering activities prior to undertaking the voyage. Additionally, it was noted by the Tax Court that any losses which taxpayers could deduct would have generated substantial tax benefits by reducing tax liability on other income and that their activities represented mere attempts to recoup some of their costs.

activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212.

2. I.R.C. § 162 provides:

(a) In general

There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business....

3. The regulation provides in part:

(b) *Relevant factors.* In determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account. No one factor is determinative in making this determination. In addition, it is not intended that only the factors described in this paragraph are to be taken into account in making the determination, or that a determination is to be made on the basis that the number of factors (whether or not listed in this paragraph) indicating a lack of profit objective exceeds the number of factors indicating a profit objective, or vice versa. Treas.Reg. § 1.183–2(b) (1972).

4. Treas.Reg. § 1.183–2(b) (1972).

The Tax Court noted that chartering activities were engaged in only when they could be accommodated within taxpayers' planned itinerary. Although the seamanship courses taken in preparation for the voyage would have been relevant to chartering activities, these courses would also have been necessary for the Carters' safety on a voyage taken for personal pleasure. Finally, the Carters had engaged in recreational boating activities and had owned boats for many years prior to the voyage in question. In light of the taxpayers' independent sources of income, the Tax Court concluded that their prior recreational boating tended to indicate a lack of a profit motive.

There is evidence in the record to support the findings of the Tax Court that the boat chartering and writing activities were not engaged in for profit. The conclusion of the Tax Court was not clearly erroneous.

B. The Tuition Expenses

■ Appellants contend that they are entitled to deduct Mrs. Carter's tuition in the amount of $1,200 for the taxable year 1971. The amount claimed and the type of courses taken were not questioned by the Tax Court. The issue is whether Mrs. Carter was in the trade or business of being a teacher at the time she undertook her course of study.[5] Appellants claim that Mrs. Carter was still carrying on the business of teaching during the voyage because she taught her own children and sought substitute teaching positions. She earned $94.00 in 1971 from the substitute teaching jobs she secured.

Evidence supports the Tax Court's conclusion that Mrs. Carter's teaching activities lacked the requisite profit motive. Mrs. Carter's deposition testimony indicated that she attempted to obtain substitute teaching

positions in various countries for educational purposes. Without a dominant motive to make a profit, she cannot be considered to be carrying on a trade or business. *Hirsch v. Commissioner*, 315 F.2d 731, 736 (9th Cir. 1963); *Bessenyey v. Commissioner*, 45 T.C. 261, 273–74 (1965), aff'd, 379 F.2d 252 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 293, 19 L.Ed.2d 283 (1967).

The Tax Court's finding that Mrs. Carter was not carrying on the business of teaching will not be set aside unless it is clearly erroneous. *Ford v. Commissioner*, 487 F.2d 1025 (9th Cir. 1973) (per curiam). In *Ford*, this court adopted the rule of *Furner v. Commissioner*, 393 F.2d 292 (7th Cir. 1968). 487 F.2d at 1026. According to the Seventh Circuit in *Furner*, an unemployed teacher could deduct tuition as an ordinary business expense if "the relationship of the course of study to intended future performance as a teacher is such that the expenses thereof can reasonably be considered ordinary and necessary in carrying on the business of teaching." 393 F.2d at 294.

Aside from the nominal substitute teaching she did in Hawaii, Mrs. Carter did not teach from 1971–1973. Her testimony indicated that she has done little, if any, substitute teaching since that time. Mrs. Carter did not demonstrate that the voyage was necessary for a job-related purpose. Although the Tax Court did not find that she had embarked on two new careers, her own assertion that she had entered new careers of chartering and writing undermines her contention that she remained in the business of teaching. The court found that any intent to return to teaching was too indefinite and could not support the conclusion that she was carrying on a trade or business of teaching in 1971. Mrs. Carter failed to establish the requisite relationship set forth in *Furner*. 393 F.2d at 294. The Tax

---

5. For the taxpayer to be eligible for deducting educational expenses, the following regulation must be examined. Treasury Regulation § 1.162–5(a)(1) provides in part:

   (a) *General rule.* Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described

in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—

   (1) maintains or improves skills required by the individual in his employment or other trade or business....

Treas.Reg. § 1.162–5(a)(1) (1967).

Court's finding is supported by the evidence and will not be set aside.

### III

### CONCLUSION

Appellants have failed to carry their burden of demonstrating that the findings of the Tax Court are clearly erroneous. Therefore, the decision of the Tax Court is affirmed.