SAMUEL L. TAYLOR and CAROL A. TAYLOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 20285-83.
United States Tax Court
T.C. Memo 1985-499; 1985 Tax Ct. Memo LEXIS 129; 50 T.C.M. (CCH) 1133; T.C.M. (RIA) 85499; September 24, 1985. Samuel L. Taylor, pro se. Mary E. Pierce, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: In a statutory notice of deficiency dated April 15, 1983, respondent determined a deficiency in petitioners' Federal income tax liability for 1981 in the amount of $3,555. After concessions, the issues remaining for decision concern the deductibility of alleged education, office, and legal expenses in excess of amounts previously allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated *131 and are so found. Petitioners Samuel L. Taylor ("Samuel") and Carol A. Taylor ("Carol") are husband and wife and resided in Edina, Minnesota, at the time the petition herein was filed. Petitioners timely filed their 1981 joint Federal income tax return on February 23, 1982. Carol received a bachelor of science degree in English in 1963. Carol became licensed as a teacher in the Commonwealth of Virginia and taught secondary English from 1964 through 1969. From 1969 through 1971, Carol returned to school and completed all of the course requirements towards a master's degree in education, but she did not write a thesis and did not receive a master's degree. From 1971 through 1975, Carol was employed by the Minneapolis public school system as a full-time, tenured English teacher. In 1975, Carol was first demoted and then dismissed by the Minneapolis public school system (hereinafter referred to as "the school district") on the grounds of insubordination. Carol thereafter filed a civil action in Federal district court against the school district and the teachers' union of which she was a member alleging that her dismissal was discriminatory and in violation of her civil rights. *132 In that action, Carol sought reinstatement of her teaching position and compensation for lost salary. Carol did not prevail in that action, and her appeal to the Eighth Circuit Court of Appeals and petition for writ of certiorari to the United States Supreme Court were unsuccessful. [1]
From 1975 through 1981, Carol prosecuted her discrimination suit pro se and assisted Samuel in the development and management of a sales business, Sam Taylor and Associates. They operated that business solely out of an office in their home. Petitioners used one room (approximately 11 feet by 14 feet) and three closets in their three-bedroom apartment to store products, complete sales orders, and perform other management duties associated with the sales business. The room contained a desk and a telephone and was not used for recreational purposes. During the years 1976 through 1980, Carol applied for several teaching positions without success. Her teacher's license expired in 1978, and she did not renew it *133 until 1982. Since 1976, Carol actively has sought employment outside the teaching profession and presently is employed as a rental agent for an apartment building. Since her dismissal in 1975, Carol has not been paid any salary by the school district, has not held a teaching position in any educational facility, and has been on "inactive status" with her teachers' union. Thus, during the year in controversy, 1981, Carol was neither employed as a teacher nor did she hold a valid teacher's license. [2] In 1980, Carol resumed full-time graduate studies at the University of Minnesota and was conferred a master's degree in education in 1982. Samuel was conferred a bachelor of science degree in business administration and social studies in 1964 and began teaching those subjects in Ohio in that year. Petitioners moved to Minnesota, and in 1970 Samuel became licensed in that state to teach special education. During 1981, Samuel was employed as a full-time special education teacher by the school district. From 1973 through 1981, Samuel also was enrolled as a part-time *134 graduate student at the University of Minnesota (hereinafter referred to as "the university"), and in 1981 he was conferred a master's degree in education with an emphasis in special education. Petitioners deducted on their 1981 Federal income tax return $2,500 for legal expenses allegedly incurred in connection with Carol's suit against the school district and in connection with garnishment proceedings that were instituted against Samuel. Respondent disallowed $2,201 of those expenses because the expenses were not substantiated and because the expenses were personal in nature. Respondent also disallowed for lack of substantiation $182.88 that petitioners deducted as union dues paid to national, state, and local teachers' federations and associations. OPINION Educational Expenses
Generally, an individual may deduct expenses incurred for education as an ordinary business expense if the education (1) maintains or improves skills required by the individual in his employment or other trade or business, or (2) meets the express requirements of the individual's employer, or the *135 requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. Sec. 162; sec. 1.162-5(a), Income Tax Regs.[3] Educational expenses are not deductible if the education is necessary to meet minimum educational requirements for qualification in the individual's employment or other trade or business, or if the education is part of a program of study that will qualify the individual for employment in a new trade or business. Sec. 162; sec. 1.162-5(b)(2)-(3), Income Tax Regs.[4]
*136 Petitioners contend that they may deduct on their 1981 Federal income tax return educational expenses incurred by both Carol and Samuel in that year because the education was related to their employment as teachers. Carol's Educational Expenses--Respondent argues that the educational expenses incurred by Carol are not deductible because during the period of time in which those expenses were incurred, and for several years prior thereto, Carol was neither employed as a teacher nor licensed by the state to teach. Therefore, respondent asserts, Carol's educational expenses did not "relate to activities which constitute the present carrying on of an existing business." Reisinger v. Commissioner,71 T.C. 568, 572 (1979); Corbett v. Commissioner,55 T.C. 884, 887 (1971). In the alternative, respondent argues that some of the expenses claimed for Carol's education are not deductible because they are personal in nature and are not adequately substantiated. A number of court decisions have dealt with fact situations similar to that presented herein and have held that *137 if one is established in a trade or business and then leaves it, educational expenses subsequently incurred in order to enable the individual to reenter the trade or business at some indefinite future time are not deductible. Reisinger v. Commissioner,supra at 572-74; Corbett v. Commissioner,supra at 887. Specifically, former teachers who pursue graduate degrees or take courses necessary for the renewal of their licenses have been held not to be entitled to deduct educational expenses if the courses giving rise to such expenses were completed during a period of time in which the individual was not presently employed as a teacher. Carter v. Commissioner,645 F.2d 784, 787-788 (9th Cir. 1981), affg. a Memorandum Opinion of this Court; Corbett v. Commissioner,supra.[5] Those cases are controlling herein.
Carol was released from her teaching position in 1975, and, although she sought employment as a teacher from 1975 through 1981, she allowed her teaching license to expire and did *138 not renew it until 1982. Indeed, by 1981, Carol was actively seeking employment in various other professions distinct from teaching and was involved in managing petitioners' sales business and in marketing its products. Therefore, we hold that Carol was not engaged in the trade or business of teaching during 1981 and that petitioners may not deduct expenses incurred in 1981 in connection with her education in 1981. Samuel's Educational Expenses--Respondent concedes that Samuel incurred educational expenses during 1981 in connection with his employment during that year as a teacher. Respondent contends, however, that petitioners have not adequately substantiated educational expenses of Samuel in 1981 in excess of $899.55 and that some of the claimed educational expenses were incurred for personal reasons. At trial, petitioners presented a summary of Samuel's 1981 educational expenses totaling $4,449.55. Set forth below is a listing of those expenses and the amounts allowed by respondent: Educational
Expenses Claimed
Amount Allowed
Amount in
Item
By Petitioners
By Respondent
Controversy
Tuition & Fees
$ 774.55
$774.55
Books
625.00
125.00
$ 500.00
Transportation
2,400.00
2,400.00
Supplies
150.00
150.00
Clothing
500.00
500.00
TOTAL
$4,449.55
$899.55
$3,550.00
*139 Petitioners estimated that Samuel spent $500 for books and course materials in excess of the amount allowed by respondent, but no receipts or other records were submitted to verify that any amount in excess of the $125 allowed by respondent actually was expended. Samuel merely made general statements that approximately $250 was spent for taxtbooks and $250 was spent for photocopying class materials and his thesis paper. Petitioners estimated that Samuel drove 500 miles per week during the 24 weeks he was enrolled at the university in 1981. Samuel testified that he drove to the university (both to the Minneapolis campus and to the St. Paul campus) from his home in Edina, Minnesota, and from his place of employment in Minneapolis, Minnesota. Samuel testified that he did not know the exact distance of either location from the university, but, for the purpose of estimating his transportation expenses, he stated that he used a figure of 100 miles per round trip to attend the university. The distance from Edina to the university, however, is approximately 20 to 25 miles (for a round trip distance of 40 to 50 miles). Samuel's place of employment in Minneapolis apparently is closer *140 to the university than is Edina, but no mileage estimate was provided as to the distance between his place of employment and the university. Expenses incurred by Samuel for transportation to and from petitioners' home and the university are personal commuting expenses and are not deductible. Zimmerman v. Commissioner,71 T.C. 367, 370 (1978), affd. without published opinion, 614 F.2d 1294 (2d Cir. 1979). [6] Transportation expenses incurred for travel between Samuel's place of employment and the university are deductible if adequately substantiated. Zimmerman v. Commissioner,supra.Petitioners, however, have failed to demonstrate what portion of the estimated total transportation expenses is attributable to trips between Samuel's place of employment and the university (as distinguished from trips between his home and the university), and there is insufficient evidence in the record to provide us a basis on which to make such an estimate under the authority of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1939). *141 Petitioners submitted no records or receipts to substantiate the $150 claimed for school supplies. Petitioners deducted the cost of school clothing for Samuel. Such expenses are nondeductible personal expenses pursuant to section 262. Based upon the evidence before us, no educational expenses are allowable in excess of the $899.55 already allowed. Expenses Related to the Sales Business
Petitioners also deducted on their 1981 Federal income tax return expenses allegedly incurred in connection with petitioners' sales business. The amounts claimed by petitioners, the amounts allowed by respondent, and the amounts thereof still in controversy are set forth below: Amount Claimed
Amount Allowed
Amount in
Item
By Petitioners
By Respondent
Controversy
Office Expenses
$ 25.00
$25.00
Office Supplies
47.00
47.00
Promotion
617.00
617.00
Car Expenses
600.00
600.00
Bank Charges
60.00
60.00
Utilities
300.00
300.00
Meals & Enter-
tainment
125.32
125.32
TOTAL
$1,774.32
$72.00
$1,702.32
Respondent concedes that petitioners were engaged in the trade or business of sales, but disallowed the expenses claimed for lack *142 of substantiation and for petitioners' failure to establish that the expenses were related to petitioners' sales business. Petitioners estimated that they expended $617 for sample products that were given to potential customers. Some receipts for items purchased were submitted, but the receipts do not identify the nature of the items. Petitioners estimated they drove 3,000 miles in 1981 in connection with their sales business, and deducted $600 as an estimate of car expenses related thereto. Petitioners presented no documentary evidence to substantiate the car expenses. Samuel testified that he often drove to the supplier's home to pick up products. Samuel, however, did not know the distance between his home and the supplier's place of residence. Petitioners deducted $60 for bank charges, $300 for utilities, and $125.32 for meals and entertainment expenses. Petitioners presented no documentary evidence that would serve as a reliable basis from which we can conclude that those expenses, if actually incurred, were incurred in connection with petitioners' business rather than for petitioners' personal use. We sustain respondent's disallowance of $1,702.32 in expenses in excess *143 of the $72 already allowed by respondent. Home Office Expenses
Also in connection with the sales business, petitioners deducted $2,500 as a business expense for an office in their home.Samuel testified that within petitioners' three-bedroom apartment, two children slept in one room, an infant child slept in petitioners' bedroom, and the third bedroom was used as an office. They also testified that there was a desk and a telephone in the third bedroom and that the closets were used to store the sales products. Samuel testified that he did not use the room to prepare for his teaching job or his university studies. Respondent contends that the room was not used exclusively as the principal place of petitioners' sales business. In the alternative, should we determine that the room in the home was used exclusively as the principal place of petitioners' sales business, respondent asserts that the deduction is properly limited to $46.50, the amount of gross income respondent contends that petitioners earned from their sales business in 1981. Section 280A(a)[7] states the general rule *144 that no deduction, within certain exceptions provided in section 280A(c), may be taken with respect to a dwelling unit that is used as a residence by a taxpayer during the taxable year. An exception applies if an allocable portion of a dwelling unit is used exclusively on a regular basis as the principal place of business for any trade or business of the taxpayer. See. 280A(c)(1)(A). [8] In addition, if the taxpayer is in the business of selling products at wholesale or retail, ordinary and necessary expenses allocable to space within a dwelling unit that is used on a regular basis to store the taxpayer's products are deductible. Sec. 280A(c)(2). [9] Deductions taken with respect to an office in the home are, among other things, limited to the gross income derived from the activity for which the home office serves as the principal place of business. Sec. 280A(c)(5). [10]
*145 In our opinion, the evidence is sufficient to establish that petitioners exclusively used the office in their home on a regular basis as the principal place of their sales business. The room was not used for recreational purposes, and petitioners used local libraries and university facilities to study for their courses at the university. Respondent has presented no evidence to the contrary. Therefore, we hold that petitioners may deduct expenses incurred in maintaining the office in their home, limited to the amount of gross income earned by the sales business in 1981 pursuant to section 280A(c)(5) (namely, $46.50). Legal Expenses
Petitioners claimed legal expenses totaling $2,954.01, which they allege were incurred in connection with Carol's civil rights suit and in connection with garnishment proceedings against Samuel. Those expenses are itemized as follows: Legal Expenses
Claimed
Amount Allowed
Amount in
Item
By Petitioners
By Respondent
Controversy
Postage
$ 249.53
$149.00
$ 100.53
Copying
150.00
150.00
Writ of Execution
15.00
15.00
Service of Process
308.09
308.09
Garnishment Fees
38.00
38.00
Sheriff's Fees
568.39
568.39
Transportation
900.00
900.00
Meals
100.00
100.00
Trial Expenses
375.00
375.00
Telephone
250.00
250.00
TOTAL
$2,954.01
$299.00
$2,655.01
*146 Respondent concedes that legal expenses incurred as a result of Carol's suit against the school district are sufficiently related to a trade or business because she sought reinstatement of her teaching position, among other things. Respondent argues, however, that petitioners failed to substantiate any such expenses in excess of $299. In our opinion, $799 (or an additional $500) is a reasonable approximation of the legal expenses incurred by petitioners in connection with Carol's suit. Therefore, under Cohan v. Commissioner,supra, we allow petitioners a deduction in the amount of $799 for legal expenses. Respondent also asserts that those expenses claimed with respect to the garnishment proceedings are personal in nature and are nondeductible. Petitioners have failed to demonstrate that the legal expenses incurred in connection with the garnishment proceeding were related to petitioners' trade or business. Therefore, such expenses (the expenses for writ of execution, service of process, garnishment fees, and sheriff's fees) are nondeductible personal expenses. Sec. 262. Union Dues
Petitioners deducted $400 for union dues paid in 1981 to local, *147 state, and national educational organizations. Of that amount, petitioners presented payroll deduction records to substantiate dues paid in the amount of $217.12. Respondent disallowed the remaining $182.88 because it was not substantiated. We agree with respondent. Petitioners also contend that they were unfairly selected for audit by respondent's agents and were subjected to harassment in the conduct of the audit. The jurisdiction of this Court is ordinarily limited to those matters contained within the statutory notice of deficiency, and we do not address herein any administrative disputes that might have arisen prior thereto. Greenberg's Express, Inc. v. Commissioner,62 T.C. 324 (1974). Due to concessions, Decision will be entered under Rule 155.
Footnotes
1. Taylor v. Minneapolis Public Schools and Minneapolis Federation of Teachers No. 95,664 F.2d 293 (8th Cir. 1981), cert. denied 456 U.S. 978↩ (1982).
2. The State of Minnesota requires all teachers to complete 120 "renewal units" in order to renew their licenses.↩
3. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue. Section 1.162-5(a), Income Tax Regs., provides: (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. ↩
4. Section 1.162-5(b)(2)-(3) provides: (b) Nondeductible Educational Expenditures. * * * (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed. * * * (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. * * *↩
5. Tyler v. CommissionerT.C. Memo. 1982-160; Goldstein v. Commissioner,T.C. Memo. 1981-96↩.
6. Smith v. Commissioner,T.C. Memo. 1981-149; Bird v. Commissioner,T.C. Memo. 1980-156; Burton v. Commissioner,T.C. Memo. 1971-55↩.
7. Section 280A(a) provides: (a) General Rule.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an S corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. ↩
8. Section 280A(c)(1)(A) provides: (c) Exceptions for Certain Business or Rental Use; Limitations on Deductions for Such Use. (1) Certain Business Use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) [as] the principal place of business for any trade or business of the taxpayer, * * * ↩
9. Section 280A(c)(2) provides: (2) Certain Storage Use.--Subsection (a) shall not apply to any item to the extent such item is allocable to space within the dwelling unit which is used on a regular basis as a storage unit for the inventory of the taxpayer held for use in the taxpayer's trade or business of selling products at retail or wholesale, but only if the dwelling unit is the sole fixed location of such trade or business. ↩
10. Section 280A(c)(5) provides: (5) Limitation on Deductions.--In the case of a use described in paragraph (1), (2), or (4), and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of-- (A) the gross income derived from such use for the taxable year, over (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used.↩